UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EMIL MEUCCI and NEUROSURGERY
AND ENDOVASCULAR ASSOCIATES,
S.C.,
      Plaintiffs,

     v.                                         Case No. 19-CV-1188

AURORA NETWORK PLAN, et al.,
      Defendants.

---

## DECISION AND ORDER

This action arises under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Plaintiffs Emil Meucci and Neurosurgery and Endovascular Associates, S.C. ("NEA") allege that the defendants failed to properly assess and pay medical benefits due under Meucci's self-insured healthcare benefit plan. Defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).

**I.    ALLEGATIONS**

The complaint alleges as follows. Meucci is a beneficiary of defendant Aurora Network Plan (the "Plan"), a medical employee benefit plan governed by ERISA. Defendant Aurora Health Care, Inc. ("Aurora") is plan sponsor and plan administrator of the Plan. Defendant Blue Cross Blue Shield of Wisconsin, Inc., d/b/a/ Anthem Blue Cross and Blue Shield ("Anthem") is claims administrator of the Plan.

The Plan is governed by the Summary Plan Description ("SPD"), which provides that Plan participants and beneficiaries can receive services from an out-of-network provider, meaning a health care provider who has not entered into an agreement with the Plan or the Anthem Blue Card Network. Where a charge for a service by an out-of-network

provider exceeds what the Plan pays for the service, the SPD provides that the participant or beneficiary is responsible for the difference, and that the out-of-network provider can directly bill the beneficiary for that sum.

The SPD dated January 2017 provided that out-of-network providers would be paid at the "usual and customary charge" for covered services. The following year, this language changed: the SPD dated January 2018 provides that out of network providers would be paid "the maximum allowed amount." The 2018 SPD requires Anthem to use one of five methods to determine the "maximum allowed amount" for a service: (1) based on Anthem's out-of-network provider fee schedule rate; (2) based on reimbursement or cost information from the Centers for Medicare and Medicaid Services (CMS); (3) based on information provided by a third party vendor, which may reflect the complexity or severity of treatment, the level of skill and experience required for the treatment, or comparable providers' fees and costs to deliver the same or similar care; (4) negotiated by Anthem or a third-party vendor which has been agreed to by the provider; or (5) derived from the total charges billed by the provider. ECF # 1-5 at 91. The SPD further provides that Anthem must select the method it uses "in a uniform and nondiscriminatory manner," and that Anthem "may select only one or two methods from the list . . . for determining a maximum allowed amount for a particular type of service (or all services provided by a particular type of out-of-network provider or provided in a particular setting)". *Id.*

Plaintiff NEA is a medical provider specializing in neurosurgery. NEA is an out-of-network provider under the Plan. In August, 2018, NEA provided medical services to Meucci, and submitted claims to defendants for those services. Upon receiving the claim forms, defendants approved the claims as covered services under the Plan, but they paid

2

Case 2:19-cv-01188-LA    Filed 06/08/20    Page 2 of 14    Document 27

only a fraction of the billed amounts. For the first claim, with service date August 15, 2018, NEA billed $88,018.00 and defendants paid $4,162.10. For the second claim, also with service date August 15, 2018, NEA billed $81,444.00 and defendants paid $1,101.92. Defendants provided plaintiffs with a Claim Status Detail for each claim—i.e., a document showing the "allowed amount" and "paid amount" for each service rendered by NEA to Meucci. Defendants did not explain how they calculated the allowed and paid amounts, and did not state which method they used to determine the maximum allowed amount.

Plaintiffs alleges that defendants had previously reimbursed NEA at higher rates for similar healthcare services rendered to other patients, and that those higher rates were representative of the usual and customary charges for said services. The complaint does not indicate whether the previous reimbursements were governed by the 2018 SPD or a previous SPD.

On February 25, 2019, NEA sent appeal letters to the plan administrator and claims administrator—i.e., Aurora and Anthem—regarding each of Meucci's claims. In its letters, NEA requested that the plan provide "reasonable access to, and copies of, all documents, records, and other information relevant to [Meucci's] claim for benefits, including the methodology used by the claims administrator to determine the maximum allowed amount." ECF # 16-3 at 5, incorporated by reference at ECF # 1, ¶ 44. On April 18, 2019, Aurora sent a letter which addressed certain issues but declined to respond to plaintiffs' appeal of the adverse benefit determination, stating that Anthem would respond to those issues by separate letter. Aurora's letter provided copies of the SPD and Plan document, but no other documents responsive to NEA's request. Anthem did not provide any response to plaintiffs' requests for documents and information.

3

Case 2:19-cv-01188-LA   Filed 06/08/20   Page 3 of 14   Document 27

## II. LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555. In construing a plaintiff's complaint, I assume that all factual allegations are true but disregard statements that are conclusory. *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

The complaint enumerates the following four claims: (I) breach of the Plan terms, enforceable pursuant to 29 U.S.C. § 1132(a)(1)(B); (II) breach of ERISA disclosure requirements, 29 U.S.C. § 1024(b) and 29 C.F.R. § 2520.104b-3, enforceable pursuant to 29 U.S.C. § 1132(a)(3); (III) breach of fiduciary duty under 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109; and (IV) failure to provide documents under 29 U.S.C. §§ 1132(a)(1)(A) and (c). Defendants move to dismiss of each of these claims. Defendants also move to dismiss NEA as a plaintiff, on grounds that Meucci did not properly assign his ERISA rights to NEA. I first consider the question of NEA's standing, and then the viability of the various ERISA claims.

### A. Assignment of Meucci's ERISA Rights to NEA

A "participant or beneficiary" of an employment benefit plan may bring a civil action under § 1132(a)(1), and a "participant, beneficiary, or fiduciary" may bring an action under §§ 1132(a)(2) and (3). When a patient who is a participant or beneficiary assigns to a

4

medical provider the right to receive the patient's entitlement under the plan, this makes the provider a "beneficiary"—provided the assignment is valid and comports with the terms of the plan. *Pennsylvania Chiropractic Ass'n v. Independence Hosp. Indem. Plan, Inc.*, 802 F.2d 926, 928 (7th Cir. 2015); *Kennedy v. Connecticut General Life Insurance Co.*, 924 F.2d 698, 700 (7th Cir. 1991).

Defendants argue that an anti-assignment provision of the Plan renders Meucci's assignment to NEA of his right to benefits under the plan invalid, at least insofar as such assignment empowers NEA to bring this action. As relevant here, the provision reads:

> All other benefits provided by the plan may be assigned at a covered person's option only to the treating health care provider. Payments made in accordance with an assignment are made in good faith and release the plan's obligation to the extent of payment. Payment will also be made in accordance with any assignment of rights required by a state Medicaid plan. Other than assignment of benefit payments to health care providers, benefit payments or any other rights (specifically including your right to appeal or bring a lawsuit following an adverse benefit determination) under the plan are not subject in any way to alienation, sale, transfer, pledge, attachment, garnishment, execution or attachment of any kind.

ECF # 1-5 at 65. According to defendants, this provision's import is that Meucci might assign to a health care provider the right to receive payments, but not the right to sue to enforce the right to payments. Plaintiffs, for their part, focus on the sentence reading that "[a]ll other benefits…may be assigned to a health care provider" and argue that it encompasses the right to sue.

Defendants' position fails. As a legal matter, it makes no sense that a patient could assign a right to benefits to a healthcare provider without empowering the healthcare provider to sue to enforce that right. Under controlling Seventh Circuit precedent, when a

5

patient assigns a right to benefits under a plan to a health care provider, that provider becomes a "beneficiary" of the plan, and beneficiaries have power to sue under §1132(a). *Pennsylvania Chiropractic,* 802 F.2d at 928; *Kennedy*, 924 F.2d 698, 700 (7th Cir. 1991). While the right to benefits arises from the plan and may be assigned or not assigned according to the terms of the plan, the right to sue arises from the statute and always attaches where an entity has a right to benefits under the plan. The right to sue cannot be singled out for non-assignability under a plan, because it does not arise from the plan.

Defendants cite various cases in which district courts within the Seventh Circuit enforced anti-assignment provisions and barred health care providers for suing for benefits under ERISA. These cases can be readily distinguished from the present matter: in each of them, the anti-assignment provision barred the assignment of *benefits*. In none of the cases did the district court enforce a plan provision that allowed assignment of benefits but barred assignment of a right to sue. See *Univ. of Wis. Hosps. & Clinics Auth. v. Aetna Health & Life Ins. Co.*, 144 F. Supp 3d 1048, 1050, 1053 (W.D. Wis. 2015)(enforcing anti-assignment clause which reads "coverage and your rights under this … plan may not be assigned."); *Univ. of Wis. Hosps. & Clinics Auth. v. Kay Kay Realty Corp. Flexible Benefit Plan*, No. 14-cv-882, 2015 WL 9028080 at *2 (W.D. Wis. Dec. 15, 2015)(enforcing provision which reads that "[n]o rights or benefits under this Policy are assignable by the Policy holder to any other party unless approved by Aetna"); *DeBartolo v. Health & Welfare Dep't of Constr. & Gen. Laborers' Dist. Council*, No. 09-cv-0039, 2010 WL 3273922 (N.D. Ill. Aug. 17, 2010)(enforcing provision that "[n]o covered person entitled to benefits under this Welfare Plan shall have the right to assign . . . his or her legal or beneficial interest in any assets of the Fund or benefits of this Fund.").

6

The anti-assignment provision at issue in the present case suffers from ambiguity and internal contradiction. The statement that "**[a]ll other benefits** provided by the plan may be assigned . . . to the treating health care provider" is difficult to reconcile with the statement, two sentences later, that "[o]ther than assignment of **benefit payments** to medical providers," benefits and rights under the plan are not subject to alienation or transfer. And it is not clear whether that final sentence, which includes the parenthetical mention of the right to bring a lawsuit, is meant to bar the assignment of the right to sue to medical providers or only to others who are not medical providers. However, in light of the Seventh Circuit's treatment of § 1132(a) as discussed above, the only sensible interpretation of the provision is that it permits the assignment to medical providers of benefits and the concomitant statutory right to sue to enforce the right to benefits, and bars the assignment or transfer of rights to other parties. The provision therefore does not bar NEA from acting as a plaintiff in this case.

It is a separate question whether Meucci executed a valid assignment of his right to benefits to NEA. Meucci alleges that he did so by means of a Designation of Representation/Authorization form, and he alleges defendants have treated NEA as a beneficiary by paying it directly and allowing it to appeal the determination of benefits. Those allegations are sufficient to withstand defendants' 12(b)(6) motion. Further, Meucci has executed an additional, comprehensive assignment of benefits to NEA since initiating this lawsuit. Meucci and NEA may amend their complaint to include this document.

### B. Breach of Plan Terms

Count One of the complaint is a claim that defendants breached the terms of the Plan by failing to pay the "maximum allowed amount" for the services NEA provided to

7

Meucci. Defendants argue that this claim should be dismissed because plaintiffs' allegations that the payment was a fraction of what NEA billed and lower than other payments defendants have made for similar services do not establish that the payments plaintiffs received were less than the "maximum allowed amount." However, plaintiffs alleged more. In particular, plaintiffs alleged that the Plan required defendants to use one of five methods to calculate the "maximum allowed amount," and to select the method in a uniform and non-discriminatory manner. Plaintiffs also allege that defendants have refused to disclose the methodology they used to calculate the "maximum allowed amount" in this case. Drawing inferences in the plaintiffs favor, as I must, these allegations are sufficient to suggest that defendants did not calculate the maximum allowed amount for the services NEA provided to Meucci in a uniform and non-discriminatory manner relative to calculations of amounts for similar services provided for others. The complaint therefore plausibly alleges that defendants' calculation of the maximum allowable amount breached the terms of the Plan.

### C. Breach of ERISA Disclosure Requirements

Under § 1132(a)(3), a beneficiary may bring a lawsuit

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (iii) to enforce any provisions of this subchapter or the terms of the plan.

Count II of the complaint seeks equitable relief to redress defendants' alleged failure to provide participants and beneficiaries adequate information about plan benefits and about modifications to the terms of the plan as required by ERISA and its implementing regulations. Plaintiffs allege that because of the defendants' failure to comply with these

8

provisions, plaintiffs not aware that the benefits the Plan would pay would be significantly less than reimbursements Anthem had previously paid to NEA for similar services. For relief, plaintiffs seek an order that the defendants pay plaintiffs for the claims using the reimbursement methodology used for previous similar claims submitted by NEA.

Defendants seek dismissal of this claim on the grounds that the relief requested is, in effect, compensatory damages and therefore duplicative of the relief sought in Count I under § 1132(a)(1)(B). Defendants misconstrue the relief sought. The order plaintiffs seek is essentially a reformation of the Plan terms to require defendants to pay plaintiffs at the rate plaintiffs reasonably expected to be paid, given defendants' alleged failure to adequately apprise plaintiffs of a material modification in the Plan terms. This equitable remedy is distinct from the compensatory damages sought in Count I, and thus Counts I and II represent distinct, alternative theories of recovery. See *CIGNA Corp. v. Amara*, 563 U.S. 421, 440 (2011). ("The power to reform contracts (as contrasted with the power to enforce contracts as written) is a traditional power of an equity court.").

Defendants also argue that this claim should be dismissed with respect to defendants Anthem and the Plan, since Aurora as Plan Administrator is the only defendant subject to the ERISA disclosure requirements that plaintiffs allege were breached. See 29 U.S.C. §§ 1022, 1024(b); 29 C.F.R. §§ 2520.102-3(j), 2520.104b-3 (all indicating that the plan administrator is responsible for providing plan participants with the SPD and notification of modifications to the SPD). However, the Supreme Court explained in *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000) that § 1132(a)(3) admits of no limit (aside from the appropriate equitable relief caveat ...) on the universe of possible defendants," and that "the focus [of § 1132(a)(3)] is on

9

redressing the '*act or practice* which violates any provision of [ERISA Title I]". Though Anthem and the Plan are not alleged to have breached the statutory duty that gives rise to this claim, they are alleged to have benefited directly from the breach by retaining and not paying monies that plaintiffs reasonably expected they would receive. Appropriate equitable relief for the alleged inadequate disclosures would almost certainly involve a transfer of such funds from Anthem and/or the Plan to the plaintiffs. Thus, that Anthem and the Plan are not responsible for the alleged breach of statutory duty does not absolve them from liability for this claim. See *Harris,* 530 U.S. at 251 (holding that a knowing transferee of trust assets obtained in breach of trust may be liable under § 1132(a)(3)); *Chesemore v. Alliance Holdings, Inc.*, 284 F.R.D. 416, 421 (W.D.Wis. 2012)(applying Harris; allowing §1132(a)(3) claim for the equitable remedy of disgorgement to proceed against gratuitous transferee of ill-gotten trust proceeds).

### D. Breach of Fiduciary Duties

Count III of the complaint is a claim under §§ 1132(a)(2) and 1109. Section 1109 provides that

> [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations or duties imposed upon fiduciaries by [ERISA Subchapter I] shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). Section 1132(a)(2) authorizes a "participant, beneficiary or fiduciary" to bring a civil action for appropriate relief under § 1109. Plaintiffs allege that defendants Aurora and Anthem breached their fiduciary duty to the Plan and to Meucci

by failing to follow the terms of the Plan, failing to properly adjudicate and pay Meucci's claim, and unreasonably determining the maximum allowed amount. ECF # 1, ¶¶ 81-82. Plaintiffs also allege that the disclosure failures alleged in Count II constitute a breach of fiduciary duty actionable under §§ 1109 and 1132(a)(2).

Defendants argue that Count III should be dismissed because § 1109 protects the interests of an ERISA plan, and plaintiffs seek only personal relief rather than identifying any injury to the Plan. Defendants are correct on this point. "Pursuant to section 1132(a)(2), a plan participant or beneficiary . . . may commence a civil action for appropriate relief under § 1109(a), but she may do so only in a representative capacity on behalf of the plan, not in her own behalf." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 481-82 (7th Cir. 2010)(citing *Varity Corp v. Howe*, 516 U.S. 489, 515 (1996)).

In response, plaintiffs argue that I should construe Count III as a claim for equitable relief under § 1132(a)(3). To do so does not salvage Count III. To the extent Count III seeks equitable relief for inadequate disclosure of the change in the policy regarding calculations of payments to out-of-network providers, it is exactly duplicative of Count II. To the extent that Count III seeks relief for improper or unreasonable application of the plan terms, the relief it seeks is legal and not equitable and is addressed in Count I under § 1132(a)(1)(B). Therefore, I will dismiss Count III.

### E. Failure to Provide Documents

Section 1132(c)(1) provides that an administrator "who fails or refuses to comply with a request for any information which such administrator is required by [ERISA Subchapter I] to furnish to a participant or beneficiary" may be subject to statutory penalties. Count IV of the present complaint is a claim for such statutory penalties.

11

Plaintiffs allege that on February 25, 2019 and March 4, 2019, they sent letters to Aurora and Anthem requesting copies of all documents, records, and other information relevant to Plaintiffs' two claims for benefits, including "any document relied on in making the benefit determination; any document that was submitted, considered or generated in making the benefit determination; any document that demonstrates compliance with the Plan's administrative processes and consistency safeguards; and any document that constitutes a statement of policy or guidance with respect to the plan concerning the benefit." ECF # 1, ¶ 92. Plaintiffs allege that Aurora and Anthem failed to provide the requested documents.

As a preliminary matter, defendants argue that Count IV should be dismissed with respect to Anthem and the Plan, since liability under § 1132(c)(1) is confined to the plan administrator. This is indeed settled law. *Mondry v. American Family Mut. Ins. Co.*, 557 F.3d 781, 794 (2009)("Consistent with the terms of [§1132(c)(1)], this court and others have held that liability under § 1132(c)(1) is confined to the plan administrator and have rejected the contention that other parties, including claims administrators, can be held liable for the failure to supply participants with the plan documents they seek."). I will dismiss Count IV with respect to Anthem and the Plan.

The disclosure requirements made actionable under §1132(c)(1) are set forth in 29 U.S.C § 1024(b)(4), which provides that the administrator of a plan

> shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

12

Case 2:19-cv-01188-LA    Filed 06/08/20    Page 12 of 14    Document 27

The Seventh Circuit has instructed that the term "other instruments" is to be narrowly construed as denoting only the set of formal legal documents governing a plan. *Ames v. American Nat. Can Co.*, 170 F.3d 751, 759 (7th Cir. 1999). Plaintiffs argue that Aurora violated the statute because it did not send any such legal documents in response to plaintiffs' requests for documents relied on in making the benefits determination. Aurora argues that it did not violate the statute because plaintiffs' request did not specifically identify the documents (e.g., "fee schedules") that they wished Aurora to provide.

The legal question is therefore whether the "other instruments" provision of § 1024(b)(4) requires a plan administrator to furnish all formal legal documents governing a plan that are responsive to a participant or beneficiary's request, or whether the administrator need only furnish those instruments specifically identified in the plaintiff's request. Because the universe of instruments governing a plan is finite and relatively small, *see Ames*, 170 F.3d at 759, and because a participant or beneficiary may not know how to identify the specific instruments sought other than by their relevance to an issue or claim, I conclude that the first of the above interpretations is more consistent with the purpose of the statute. Thus, plaintiffs may proceed on their claim under § 1024(b)(4) even though the letters they sent to Aurora asked for documents relevant to a claim rather than identifying specific documents.

Plaintiffs also assert that Aurora is subject to statutory penalties under §1132(c)(1) because it failed to comply with the requirement under 29 U.S.C. § 1133 that an employee benefit plan "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." However,

13

the Seventh Circuit has made clear that § 1132(c) "cannot be used to redress a violation of 29 U.S.C. § 1133." *Wilczyinski v. Lumbermens Mut. Cas. Co.,* 93 F.3d 397, 405 (7th Cir. 1996). Plaintiffs therefore may not proceed on this theory.

### IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that defendants' Motion to Dismiss for Failure to State a Claim (ECF # 11) is **GRANTED IN PART and DENIED IN PART.**

Dated at Milwaukee, Wisconsin, this 8th day of June, 2020.

s/Lynn Adelman
LYNN ADELMAN
United States District Judge
